**C.L.D., Plaintiff,**

v.

**WALL–MART STORES, INC., Defendant.**

No. CIV. 98–694 (JRT/RLE).

United States District Court, D. Minnesota.

Dec. 30, 1999.

T Oliver Skillings, Halverson & Assoc, Mankato, MN, for C.L.D., plaintiff.

Andrew Louis Marshall, Jennifer L Hill, Bassford Lockhart Truesdell & Briggs, Minneapolis, MN, for Wal–Mart Stores Inc, defendant.

## MEMORANDUM OPINION AND OR-DER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDG-MENT

TUNHEIM, District Judge.

Plaintiff C.L.D. brings this action against her former employer, defendant Wal–Mart Stores, Inc., alleging that one of her supervisors improperly disclosed private information to her co-workers. Plaintiff brings claims against defendant for tortious invasion of privacy, promissory estoppel, and violation of the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363.03. This matter is before the Court on defendant's motion for summary judgment against all claims.

## BACKGROUND

Plaintiff began working for defendant in August 1995 as a cashier at one of its stores in Mankato, Minnesota. Defendant later promoted her to the position of customer service manager, in which she continued until her employment terminated in February 1997.

Upon beginning her employment defendant required plaintiff to sign two standardized documents setting forth its policies with regard to various employment matters. The first of these documents consists of a single page explaining defendant's policies and practices with regard to new employee probationary status, working hours, reductions in force, scheduling, and similar issues (the "New Associate Form"). The New Associate form also contains the following statement, which describes defendant's "Open Door Policy": "Wal–Mart has an Open Door Policy which encourages associates to discuss any matter freely, openly, and in confidence with their Store manager or other levels of Management. We encourage you to use this at anytime."

The other document that defendant required plaintiff to sign is a multi-page volume containing detailed explanations of defendant's history, policies and practices with regard to a broad range of topics including company goals, employee training, employee evaluations, transfers, personnel records, work ethics, profit sharing, on-the-job accidents and other issues related to employment (the "Associate Handbook"). The Associate Handbook further explains defendant's Open Door Policy as follows:

> Our Open Door–Open Mind policy allows each of us the chance to be heard. It says that if you have an idea or problem, you can go to your Coach to talk about it without fear of retaliation. If you don't feel satisfied with the response, or if your Coach is the source of your problem, you can go to his or her supervisor.

You can go up to each level of management, including our Company's top leaders, with your idea or concern. Remember, while Open Door–Open Mind promises that you will be heard without retaliation, it cannot promise that your opinion will always prevail.

The Associate Handbook also contains a disclaimer indicating that the policies and benefits set forth therein are not terms and conditions of employment and that the handbook is not a contract. Plaintiff signed both the New Associate Form and the Associate Handbook on August 29, 1995, thereby acknowledging that she had read and understood them.

Sometime in September 1996 plaintiff learned that she was pregnant. She decided to terminate the pregnancy and scheduled an abortion in early October 1996. Plaintiff thereafter requested a medical leave of absence from defendant because it was necessary for her to take time off of work for the procedure. Plaintiff made her request to John Enright ("Enright"), an assistant manager on duty. Plaintiff met with Enright behind closed doors and told him that she needed a medical leave of absence. Although Enright approved the request without seeking further disclosure, plaintiff volunteered the fact that she was pregnant and "losing the baby." Plaintiff asserts that she made the voluntary disclosure because she felt psychological pressure from Enright to legitimize her request. Plaintiff concedes that she did not mention the Open Door Policy during her conversation with Enright or explicitly ask him to keep the matter in confidence.

Plaintiff alleges that when she returned from leave three employees at Wal–Mart knew that she had been pregnant and had an abortion, including Kay Schemmel ("Schemmel"), her immediate supervisor, Denita Blanshan ("Blanshan"), a co-worker, and Nancy McDonald ("McDonald"), another co-worker. Defendant has submitted evidence that calls this assertion into question, suggesting that the named individuals may not have learned of plaintiff's pregnancy until the following December after plaintiff admittedly began disclosing the information herself. Nevertheless, for purposes of this motion the Court views all factual disputes in the light most favorable to plaintiff. The Court for this reason assumes as true plaintiff's assertion that Schemmel, Blanshan and McDonald knew about her pregnancy when she returned to work.

In light of this assertion plaintiff contends that Enright told other Wal–Mart employees about her pregnancy and abortion, although Enright avers that he did not do so. Plaintiff concedes that she lacks direct evidence that Enright disclosed the nature of her medical leave to any other Wal–Mart employee. She asserts, however, that at the time of her return from medical leave she had only told a few individuals about her pregnancy, including Enright, her physician, and two friends whom she asked to drive her to the abortion clinic. Plaintiff thus infers that because Enright was the only Wal–Mart employee whom she told about her situation, and because other people at Wal–Mart learned of it, Enright must have been the source of their information.

Plaintiff concedes that in early December 1996 she voluntarily disclosed her pregnancy to other Wal–Mart employees. She nevertheless contends that she was forced to do so to defend herself against rumors about her that had already been spread.

Plaintiff voluntarily terminated her employment with Wal–Mart in February 1997. Her decision to leave followed a romantic affair in December with a Wal–Mart employee, Jeffrey Meyerhoffer ("Meyerhoffer"), who was also involved with another Wal–Mart employee, Anne Thamert ("Thamert"). Schemmel avers that, prior to quitting her job, plaintiff told her that she could no longer work with Meyerhoffer and Thamert. Schemmel further avers that plaintiff did not mention the rumors about her pregnancy as a reason for her decision to leave.

## ANALYSIS

### I.  Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, a court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir.1980). The nonmoving party may not merely rest upon allegations or denials in its pleadings, however, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir.1981).

### II.  Tortious Invasion of Privacy

The Minnesota Supreme Court recently recognized the tort of invasion of privacy to be a cognizable claim in *Lake v. Wal–Mart Stores, Inc.*, 582 N.W.2d 231 (Minn. 1998). The Restatement (Second) of Torts describes four distinct causes of action falling within the scope of this tort, including intrusion upon seclusion, appropriation of name or likeness, publication of private facts, and false light publicity. *See* Re-

statement (Second) of Torts § 652A. The court in *Lake* recognized all of these causes of action with the exception of false light publicity. *See Lake*, 582 N.W.2d at 236. Of the remaining three classes of this tort, only publication of private facts is applicable to plaintiff's allegations.[1]

Publication of private facts occurs when a party "gives publicity to a matter concerning the private life of another ... if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Lake*, 582 N.W.2d at 233 (quoting Restatement (Second) of Torts § 652D (1977)). Defendant argues that the Court should dismiss plaintiff's claim on the ground that she has failed to show that the information at issue was "publicized" as that term is defined in the context of this tort.

The relevant Minnesota cases offer no guidance regarding what facts an invasion of privacy tort claimant must allege in order to satisfy the burden of showing that "publicity" or "publication" of private information has occurred. Aside from recognizing the legitimacy of the invasion of privacy tort, the court in *Lake* declined to apply it to the case at bar. Indeed the court did not even address which, if any, of the three causes of actions recognized might apply, thus leaving the merits of the plaintiff's claims wholly for the trial court to determine on remand. *See id.* at 236. *Lake* thus conferred upon other courts the task of defining the contours of these newly recognized causes of action.

Lacking instruction on this issue from the courts of Minnesota, the Court looks to other sources for guidance. The Restatement (Second) of Torts provides that the

---

1.  "Intrusion upon seclusion" occurs when a party intentionally intrudes upon the solitude, seclusion, private affairs or concerns of another individual if the intrusion would be highly offensive to a reasonable person. *See* Restatement (Second) of Torts § 652B (1977). In this case, plaintiff voluntarily disclosed her medical circumstances to Enright and cannot claim that he obtained the information by

intrusive means. "Appropriation of name or likeness" occurs when a party appropriates for his or her own use the likeness of another person. *See* Restatement (Second) of Torts § 652C (1977). Plaintiff does not charge defendant or any of its employees with exploiting her name, identity, or appearance, and therefore does not state a claim under this cause of action.

term "publicity" should be construed narrowly:

> "Publicity," as it is used in this Section, differs from "publication," as that term is used ... in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.... Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

Restatement (Second) of Torts § 652D, comment a.

■ Under this definition of "publicity," plaintiff has failed to state a cause of action for publication of private facts. Plaintiff does not allege that defendant disclosed her abortion in the media or in any other form accessible to the population at large. Moreover, plaintiff asserts only that a few of her co-workers learned of her pregnancy prior to the time that she began disseminating that information on her own. No reasonable fact-finder could infer from these allegations that defendant disclosed her abortion to a sufficiently large number of people that the public at large either knew or was substantially certain to become aware of it.

Although the possibility exists that the Minnesota Supreme Court will define publicity much more broadly than the Restatement does, this possibility appears to be remote.[2] The *Lake* court not only cited the relevant section of the Restatement with approval, but also quoted it verbatim in defining the elements of this cause of action. Moreover, the majority of state and federal courts to consider this issue have held that communication to a few people is not sufficient publicity to state a cause of action under this tort. *See, e.g., Davis v. Monsanto Co.,* 627 F.Supp. 418, 421 (S.D.W.Va.1986); *Harris v. Easton Pub. Co.,* 335 Pa.Super. 141, 483 A.2d 1377, 1384 (1984); *Porten v. University of San Francisco,* 64 Cal.App.3d 825, 828, 134 Cal. Rptr. 839 (Cal.Ct.App.1976); *French v. Safeway Stores, Inc.,* 247 Or. 554, 430 P.2d 1021, 1023 (1967) (citing Prosser for the proposition that disclosure to a few people did not constitute sufficient publicity); *cf. Greenwood v. Taft, Stettinius & Hollister,* 105 Ohio App.3d 295, 663 N.E.2d 1030, 1035 (1995) (declining to decide whether the Restatement definition or an expanded definition of publicity applies).

Furthermore, Minnesota cases antedating *Lake* suggest that the courts in this jurisdiction are likely to adopt a narrow definition of publicity similar to, or even more narrow than, that set forth in the Restatement. In *Hendry v. Conner,* 303 Minn. 317, 226 N.W.2d 921, 923 (1975), the Minnesota Supreme Court declined to adopt the invasion of privacy tort, but held that if it were to recognize this cause of action the plaintiff's claim would fail in any

**2.** Plaintiff notes that in an Order issued earlier in these proceedings, the Magistrate Judge questioned defendant's reliance on the Restatement definition of "publicity." Plaintiff argues on this basis that the Court has already determined that the level of publicity required is more broad. Plaintiff's argument is not well taken. The issue before the Magistrate Judge was whether plaintiff should be permitted to amend her complaint to include a tortious invasion of privacy claim, or whether her motion to amend should be denied as futile. The Magistrate Judge properly permitted the amendment on the ground that the record was developed insufficiently at that time to conclude that the amendment would be futile. Plaintiff has now had sufficient opportunity to develop her claim in order for the Court to engage in a more exacting scrutiny of its merits. Moreover, although the Magistrate Judge did question whether a narrow definition of publicity such as that contained in the Restatement applies in this jurisdiction, he did not make that determination with finality. Plaintiff's reliance on the Magistrate Judge's discussion of this issue is therefore misplaced.

event. *See id.* One of the grounds for dismissal cited by the court was that publicizing the plaintiff's bankruptcy status to a small number of people in a hospital waiting room did not constitute sufficient publicity to state a claim. *See id.* In so holding, the court quoted the following language with approval: "When ... the privacy action is premised solely upon a disclosure of secret or confidential matter ... then if ... mere words of mouth can ever be actionable ... the oral communication must be broadcast to the public in general or publicized to a large number of people." *See id.* at n. 1 (quoting *Reed v. Ponton,* 15 Mich.App. 423, 166 N.W.2d 629 (1968) (internal quotations and citations omitted)). Other, more recent, cases have adopted similar reasoning. *See Robbinsdale Clinic, P.A. v. Pro–Life Action Ministries,* 515 N.W.2d 88, 92 (Minn.Ct.App.1994) ("[E]ven where invasion of privacy claims are recognized, they are generally not allowed where private facts are only communicated to a single person or a small group of people ..."); *Tibbetts v. Crossroads, Inc.,* 411 N.W.2d 535, 537 (Minn.Ct.App. 1987) (dismissing the plaintiff's claim on several grounds, including his failure to allege "widespread publicity").

■ These authorities persuade the Court that when the Minnesota Supreme Court does address the definition of "publicity" it will follow the majority of other jurisdictions and hold that disclosure to a few individuals, as plaintiff alleges occurred in this case, is insufficient to state a claim under this tort. The Court accordingly dismisses plaintiff's claim for tortious invasion of privacy on the ground that plaintiff's abortion was not sufficiently publicized.

Furthermore, even if a more broad definition of publicity is applicable plaintiff's claim must be dismissed on the ground that she has not produced sufficient evidence to permit it to proceed. Plaintiff lacks direct evidence that Enright disclosed her pregnancy and abortion to other Wal–Mart employees, and he flatly denies this allegation. Moreover, her inference that he did so simply because he was one of the few people who knew is weakened by facts in the record that suggest other means by which the rumors of plaintiff's pregnancy may have been instigated.

The record indicates that one of plaintiff's roommates at the time, Jill Bartos ("Bartos"), was also a Wal–Mart employee. Plaintiff states that she did not tell Bartos about her pregnancy and abortion. She admits, however, that she experienced frequent nausea during her pregnancy and that her roommates were aware of this. Plaintiff's roommates may have deduced from her symptoms that she was pregnant. She also states that she took a home pregnancy test in their apartment and disposed of it in the kitchen garbage. Although plaintiff wrapped the test in a paper bag to conceal it, a possibility exists that either Bartos or another of her roommates could have discovered it. Moreover, one of the two friends whom plaintiff asked to drive her to the abortion clinic, Jenn Wolfe ("Wolfe"), was a student at Mankato State University who attended classes with plaintiff and other Wal–Mart employees. Plaintiff admits that Wolfe knew her roommates, and offers no evidence to dispute the possibility that Wolfe talked about her abortion with her roommates or with other Wal–Mart employees with whom Wolfe was acquainted through school. Finally, the record supports an inference that plaintiff would have faced similar rumors upon her return from medical leave even if they had not been true. Plaintiff has testified that another Wal–Mart employee told her that she once took a leave of absence to treat alcoholism. The employee stated that even though she had not been pregnant she nonetheless was forced to confront rumors upon her return that she had been pregnant and sought an abortion.

In the absence of more direct evidence linking Enright to the rumors, these facts undermine the reasonableness of plaintiff's inference that he inappropriately disclosed her secret to other Wal–Mart employees. Although the Court dismisses plaintiff's tortious invasion of privacy claim primarily

on the ground that she has failed to allege sufficiently wide-spread publicity to state a claim, the Court finds for these reasons that the weakness of plaintiff's evidence provides an alternative ground for dismissal.[3]

### III. Promissory Estoppel

■ Promissory estoppel is an equitable doctrine pursuant to which an implied contract is created where none exists in fact. *See Ruud v. Great Plains Supply, Inc.,* 526 N.W.2d 369, 373 (Minn.1995). In order to state a claim under this doctrine, a plaintiff must establish that the defendant made a clear and definite promise, that the defendant intended to cause her to rely on that promise, that she actually relied on the defendant's promise to her detriment, and that the promise must be enforced to prevent an injustice. *See id.*

Plaintiff premises her promissory estoppel claim on the New Associate Form that defendant required her to sign at the start of her employment. She argues that the language contained therein with regard to defendant's Open Door Policy creates a promise of confidentiality that defendant breached by disclosing information about her pregnancy to other employees. The language upon which plaintiff relies states that the Open Door Policy "encourages associates to discuss any matter freely, openly, and in confidence" with their store manager or other levels of management.

■ Defendant contends that this language does not constitute a clear and definite promise upon which plaintiff justifiably could have relied. The Court agrees. Plaintiff makes a giant interpretive leap in construing this language to create a covenant not to disclose any matter whatsoever that an associate reveals to a management level employee in privacy. The language to which plaintiff points constitutes more of a suggestion than a promise. Although it vaguely implies that management will keep some discussions with associates con-

fidential, it does not do so clearly and explicitly. Moreover, the scope of any promise implied by this language is indefinite. The statement provides no guidance regarding which disclosures might fall within the reach of the promise of confidentiality, whether an employee must request confidentiality in order to invoke the policy's protection, or from whom the information disclosed will be kept confidential. Thus, if the New Associate Handbook promises confidentiality at all, it does so in a manner that is vague and ambiguous rather than clear and definite.

Furthermore, the interpretation that plaintiff seeks to give this provision is not supported by the description of the Open Door Policy contained in the Associate Handbook. The Associate Handbook provision makes no reference to confidentiality whatsoever, but merely promises that employees can feel free to discuss their ideas and concerns with any level of management without fear of retaliation. Although feeding the office rumor mill with an employee's private communications arguably could constitute a form of retaliation, plaintiff does not allege that Enright disclosed her pregnancy with retaliatory motives. The Associate Handbook thus does not further plaintiff's position. The Court finds for these reasons that defendant's Open Door Policy does not give rise to a clear and definite promise of confidentiality upon which plaintiff justifiably could rely.

Moreover, for the above reasons, the evidence in the present record does not lead to a reasonable inference that Enright was the source of the rumors about plaintiff's pregnancy. Therefore, even assuming that defendant made a clear and definite promise to keep plaintiff's disclosure confidential, she lacks sufficient evidence to demonstrate that defendant breached that promise.

■ Finally, defendant argues that plaintiff's promissory estoppel claim fails

---

**3.** Having dismissed plaintiff's claim on these grounds, the Court does not address defendant's arguments for dismissal on the ground

that the information disclosed was not "private," and on the ground that plaintiff's claim is untimely.

on the ground that she seeks to recover only damages for emotional distress. In *Deli v. University of Minnesota*, 578 N.W.2d 779, 781–83 (Minn.Ct.App.1998), the Minnesota Court of Appeals held that, absent an independent tort claim, damages for emotional distress are not recoverable on a claim for promissory estoppel. The court reasoned that promissory estoppel sounds in contract and held that damages on a promissory estoppel claim are limited to those that would be recoverable on a claim for breach of contract. *See id.* at 782–83; *see also Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 390 (Minn.1992) (awarding plaintiff the same damages on a promissory estoppel claim as those available to him under a breach of contract theory). Because Minnesota courts have traditionally denied emotional distress damages for breach of contract unless the breach is accompanied by an independent tort, the *Deli* court concluded that emotional distress damages are not recoverable on a promissory estoppel claim in the absence of such a tort. *See id.* at 782 (citing *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 561 (Minn.1996)). In *Deli*, as in this case, the plaintiff sought emotional distress damages arising from the defendant's alleged breach of a promise of confidentiality. Although the court acknowledged that the "inherently personal nature" of the information disclosed differentiated the case at bar from ordinary contractual claims, the court rejected the plaintiff's contention that these "special circumstances" warranted an award of damages for emotional distress. *See id.*

The Minnesota Supreme Court has not yet addressed the precise issue decided in *Deli*, and therefore, the law in this jurisdiction is not entirely settled. Moreover, a few courts have questioned whether the general rule against recovery of emotional distress damages in contract and promissory estoppel cases should apply to claims for breach of privacy agreements, when no pecuniary harm is at issue and the principal damages to be anticipated upon breach are loss of reputation and emotional distress. *See Huskey v. National Broadcasting Co., Inc.*, 632 F.Supp. 1282, 1292–93 (N.D.Ill.1986); *Humphers v. First Interstate Bank*, 298 Or. 706, 696 P.2d 527, 529 (1985). Nevertheless, the decision in *Deli* appears to reflect the trend in most courts, including the courts in Minnesota. *See* Susan M. Giles, *Promises Betrayed: Breach of Confidence as a Remedy for Invasions of Privacy*, 43 Buff. L.Rev. 1, 27–29, 38 & n. 120 (1995).

Moreover, plaintiff's promissory estoppel claim fails under the holding in *Deli*. Although she has asserted an independent invasion of privacy tort claim against defendant, the Court finds for the above reasons that this claim is without merit. Plaintiff's failure to seek recoverable damages thus constitutes an alternative ground for dismissing her promissory estoppel claim.

## IV. Minnesota Human Rights Act

Plaintiff additionally states a claim against defendant for "unfair employment practices" under the MHRA. Plaintiff has failed entirely to argue the merits of this claim or to articulate the precise theory upon which she brings it. Nevertheless, the complaint alleges that she is female and pregnant, and that defendant created a hostile work environment by disclosing her pregnancy and abortion to other employees. The complaint further alleges that as a result, defendant caused her to terminate her employment, resulting in lost wages and benefits and emotional distress. Based on these statements the Court construes the complaint to state a claim for hostile work environment sexual harassment resulting in constructive discharge.

In order to state a prima facie claim of hostile environment harassment, plaintiff must prove five elements: that she was a member of a protected class; that unwelcome harassment in the workplace occurred; that the harassment was based on sex; that the harassment affected a term, condition, or privilege of em-

ployment; and that defendant knew or should have known of the harassment and failed to take timely and appropriate action. *See Klein v. McGowan,* 198 F.3d 705, 708 (8th Cir.1999) (defining the elements of hostile environment claims under both Title VII and the MHRA); *Bales v. Wal–Mart,* 143 F.3d 1103, 1106 (8th Cir. 1998); *see also* Minn.Stat. § 363.01, subd. 41 (defining "sexual harassment" under the MHRA to include unwelcome sexually motivated conduct that substantially interferes with a claimant's employment or creates a hostile or offensive employment environment if the employer knows or should know and fails to respond appropriately).[4] The harassment alleged must be sufficiently severe and pervasive to create an objectively hostile or abusive work environment. *See Klein,* at 708 (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable and thus forces [her] to quit [her] job." *Id.*

Plaintiff in this case has failed to demonstrate that she suffered actionable harassment at Wal–Mart. Indeed, she has failed to demonstrate that she suffered any form of harassment at all. The disclosure of information about her pregnancy and abortion was not, itself, an act of harassment directed at her because of her sex. Moreover, such conduct, alone, did not rise to the level of severe or pervasive harassment sufficient to create an objectively hostile and abusive work environment. Plaintiff has produced no further evidence of any other employee conduct that might constitute harassment. Although she asserts that several employees knew about her pregnancy and abortion as a result of the alleged disclosure, she does not assert that any of these employees engaged in harassing conduct towards her as a result of such knowledge. While the fact that they knew about her pregnancy was in all probability a source of genuine embarrassment to plaintiff, their knowledge does not itself constitute harassment.

Plaintiff has also failed to demonstrate that the alleged disclosure of information affected a term or condition of her employment. Although she contends that she terminated her employment as a result of defendant's conduct, she has produced no evidence whatsoever to support this contention. She did not leave her position at Wal–Mart until February 1997, more than three months after the inappropriate disclosure allegedly occurred. Furthermore, the evidence suggests that plaintiff had other reasons for leaving her position. Specifically, plaintiff's statement to Schemmel upon terminating her employment suggests that she was not motivated to do so because of the office gossip about her pregnancy, but rather, because she no longer wanted to work with a co-worker with whom she had an affair. Plaintiff has not disputed this evidence. The Court finds for these reasons that she has failed to support her constructive discharge claim. The Court accordingly dismisses plaintiff's MHRA claim on the ground that she has failed to demonstrate that she experienced actionable harassment or to show that her co-workers' conduct affected a term or condition of her employment.[5]

4. With a few exceptions that are not applicable to the Court's analysis, the same standards are applicable to federal Title VII claims and claims raised under the MHRA. *See Klein,* at 708 (addressing MHRA and Title VII claims simultaneously); *Todd v. Ortho Biotech. Inc.,* 175 F.3d 595, 599 (8th Cir.1999) (noting that Minnesota courts frequently look to Title VII cases when interpreting the MHRA, but finding that the Supreme Court's recent holdings in *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,*

524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), are inapplicable to MHRA claims to the extent that these cases recognized vicarious liability against an employer in a hostile environment sexual harassment claim based on a supervisor's conduct).

5. Because the Court finds plaintiff's MHRA claim to be plainly deficient on the merits, it does not address defendant's argument that she amended her complaint to include it in violation of the Magistrate Judge's order.

The Court notes that the file in this case was ordered sealed by the Magistrate Judge to prevent disclosure of plaintiff's name. The Court does not consider this Order to be covered by Order to Seal and in addition, plaintiff's name is not disclosed in this Order. The Court therefore directs that this Order be published and that it not be considered subject to the seal.

## ORDER

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 27] is **GRANTED.**

**LET JUDGMENT BE ENTERED AC-CORDINGLY.**