Sandra **BODAH, et al., on their own behalf and on behalf of all others similarly situated, Appellants,**

v.

**LAKEVILLE MOTOR EXPRESS, INC., Respondent.**

No. C5–02–276.

Court of Appeals of Minnesota.

Aug. 20, 2002.

## OPINION

MINGE, Judge.

The safety director of respondent trucking company faxed a list of 204 employee names and social security numbers to 16 trucking terminals in six states. Appellants brought an invasion of privacy class-action lawsuit. The district court dismissed the complaint for failure to state a claim, ruling that the dissemination did not constitute publication to the public at large or to a substantial group of people. Appellants contend that (a) respondent's dissemination meets the established "publicity" thresholds; and (b) this court should adopt a new publicity threshold because the traditional publicity definition as applied to social security numbers was inappropriate. Because we determine that admitted and alleged facts could constitute adequate publication and shift the burden of going forward to the respondent, we reverse and remand.

## FACTS

Appellants Sandra Bodah, Wayne Senne, John Tonsager, and Mark Urick are former or current employees of respondent Lakeville Motor Express, Inc. Respondent is a trucking company that does business throughout the upper Midwest. Respondent uses trucking terminals that are either wholly owned by respondent or are owned by independent trucking companies and serve as respondent's agents.

On January 4, 2001, respondent's safety director, William Frame, faxed a memo listing the names of 204 truck drivers and their social security numbers to the managers of 16 trucking terminals in six states, including several terminals that contracted with the respondent. The memo stated:

> In order for the safety department to keep computer records for terminal acci-

Alf E. Sivertson, Sivertson and Barrette, P.A., St. Paul, MN; and Thomas J. Lyons, Thomas J. Lyons, Jr., Thomas Lyons & Associates, P.A., Little Canada, MN, for appellants.

Richard L. Gill, William A. Webster, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN, for respondent.

Considered and decided by PETERSON, Presiding Judge, SCHUMACHER, Judge, and MINGE, Judge.

dents, injuries, etc. we need to have social security numbers, names, hire date, and termination date. Please review list for your terminal, add or delete accordingly. Fax back to me. Once this is done it will be just a matter of communications.

No confidentiality admonition was contained in the cover sheet. Shortly after the dissemination of this memo, appellant Tonsager confronted Frame and respondent's president, Peter Martin, about the wrongful dissemination of these social security numbers and expressed concerns about identity theft.

On May 1, 2001, Martin sent a letter to respondent's drivers and dockmen explaining that the list of drivers and their social security numbers was prepared for "insurance renewal purposes" and was "mistakenly sent to other terminals." Martin continued:

Once I learned of the problem, I instructed the Safety Department to contact the terminal managers who were sent the list, asking them to destroy or return it immediately. This was done. As far as I know, the contents of the list were not shared with anyone beyond the small group of terminal managers. I am confident that after destroying the information, they did nothing further with it. I do not know of any employee who has been hurt by disclosure of this limited information.

Appellants allege that (1) "the private information has not been redacted or erased and is still being shared or is accessible in general;" and (2) the employees had incurred and would continue to "incur costs to monitor their credit ratings and [to] take preventive measures against identity theft."

In August 2001, appellants initiated a class-action lawsuit against respondent for invasion of privacy. Respondent moved for dismissal of the complaint pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim. Aside from the contents of appellants' complaint, there is no factual record. Respondent neither filed an answer nor furnished any affidavits. On December 11, 2001, the district court dismissed appellants' complaint holding that respondent's communication to 16 terminal managers—who were either respondent's employees or agents—constituted a private communication rather than a public one. The district court added that the actions of respondent's president directing the terminal managers to destroy or return the list negated any inference that the publication would be disseminated to the public at large. Judgment was entered, and this appeal followed.

## ISSUE

Does an employer's faxing 204 employees' social security numbers to 16 managers of affiliated businesses in six states together with alleged continued sharing and accessibility of the information state a legally sufficient claim for invasion of privacy?

## ANALYSIS

**Standard of Review**

On appeal from a dismissal for failure to state a claim upon which relief can be granted, "a reviewing court must only determine whether the complaint sets forth a legally sufficient claim for relief." *Geldert v. Am. Nat'l Bank*, 506 N.W.2d 22, 25 (Minn.App.1993), *review denied* (Minn. Nov. 16, 1993). Whether the plaintiff can prove the facts alleged is immaterial. *Stead–Bowers v. Langley*, 636 N.W.2d 334, 338 (Minn.App.2001), *review denied* (Minn. Feb. 19, 2002). The facts in the complaint are accepted as true, and the plaintiff has the benefit of all favorable and reasonable

inferences. *Pullar v. Indep. Sch. Dist. No. 701,* 582 N.W.2d 273, 275–76 (Minn.App. 1998). Dismissal of a complaint for failure to state a claim is only proper if there are no facts consistent with the pleading that support the relief demanded. *Brakke v. Hilgers,* 374 N.W.2d 553, 555 (Minn.App. 1985). An appellate court reviews the claim's legal sufficiency de novo. *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn. 1997).

**Right of Privacy**

The Minnesota Supreme Court recognized the tort of invasion of privacy in *Lake v. Wal–Mart Stores, Inc.,* 582 N.W.2d 231, 235 (Minn.1998):

> Today we join the majority of jurisdictions and recognize the tort of invasion of privacy. The right to privacy is an integral part of our humanity; one has a public persona, exposed and active, and a private persona, guarded and preserved. The heart of our liberty is choosing which parts of our lives shall become public and which parts we shall hold close.

The court identified three distinct causes of action within the scope of this privacy right: intrusion upon seclusion, appropriation of name or likeness, and publication of private facts. *Id.* at 233. It rejected a fourth cause of action: false light publicity. *Id.* at 236. Its analysis drew from the Restatement (Second) of Torts. In this regard, the court observed that publication of private facts constitutes an invasion of privacy when one

> gives publicity to a matter concerning the private life of another * * * if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

*Id.* at 233 (quoting Restatement (Second) of Torts § 652D (1977)).

The right of privacy is a relatively new concept in the law and is developing quickly. The range of situations covered by a right to privacy claim does not always fit within the Restatement categories. The Restatement itself was drafted prior to 1970 and is in some respects eclipsed by subsequent evolving caselaw. Be that as it may, our supreme court in the *Lake* decision used the Restatement categories in recognizing the right of privacy, and the parties in this case have proceeded on the assumption that this situation falls under the category of publication of private facts.

Two key determinations must be made incident to this cause of action: (1) whether a person's social security number is indeed a private fact; and (2) whether publication has occurred. *Id.*

**Social Security Numbers as Private Facts**

■ Social security numbers are broadly recognized as confidential information. The federal government and the states have passed numerous laws on the right of privacy, and courts have recognized that social security numbers are private information. *See* Flavio Kamuves, *We've Got Your Number: An Overview of Legislation And Decisions To Control The Use Of Social Security Numbers as Personal Identifiers,* 16 J. Marshal J. Computer & Info. L. 529, 531–535, 565–567 (1998). Appellants persuasively argue that social security numbers are a key to identity in our society. Unlike certain information such as medical conditions, social security numbers are not on their face revealing, compromising, or embarrassing. They are, however, such a significant identifier that they facilitate access by others to many of our most personal and private records and can enable someone to impersonate us to our embarrassment or financial loss. *See*

*generally Greidinger v. Davis,* 988 F.2d 1344, 1354 (4th Cir.1993) (stating that "the harm that can be inflicted from the disclosure of a SSN to an unscrupulous individual is alarming and potentially financially ruinous"). This is part of the so-called identity-theft phenomenon that is an increasing risk and problem in our society.

In *In re Crawford,* 194 F.3d 954, 958 (9th Cir.1999), the court dramatically described the problem:

> In an era of rampant identity theft, concern regarding the dissemination of SSNs is no longer reserved for libertarians inveighing against the specter of national identity cards. *See Greidinger* at 1353 ("[A]rmed with one's SSN, an unscrupulous individual could obtain a person's welfare benefits or Social Security benefits, order new checks at a new address on that person's checking account, obtain credit cards, or even obtain a person's paycheck."). Unlike a telephone number or even a name, an individual's SSN serves as a unique identifier that cannot be changed and is not generally disclosed by individuals to the public.

Respondent does not question the private nature of social security numbers. Respondent's president's apology to appellants for the dissemination of the social security numbers constitutes recognition of this privacy expectation and is refreshing for its candor.

Although social security numbers are private, they are available in a wide range of contexts in our society. We provide them to others continuously. One is daily exposed to the risk that someone at work, a government office, school, an accountant's office, a financial institution, or dozens of other settings may improperly use our social security numbers or provide these numbers to others who will do so. Misappropriation of social security numbers is a pervasive risk of modern life. In all of the settings where these numbers are available, however, the entities with that information and their employees are bound by contractual and legal constraints to hold our social security numbers in confidence. Given the very sensitive and important nature of the social security numbers, these constraints are important to a functioning society.

## Publication

The difficult question in this case is defining the standard for what level of publication or dissemination of another's social security number constitutes tortious invasion of privacy. To date, no court has held that disclosure of a social security number to an unauthorized person is a per se violation of one's right of privacy that entitles the victim to relief. The question is how extensive the dissemination must be. Given the strong interest of society in protecting information like social security numbers, the standard must be appropriate to the situation.

As noted earlier, the seminal Minnesota right-of-privacy decision is *Lake.* The nature of the dissemination in that case is a baseline. In *Lake,* the plaintiffs complained that a nude photo of them had been included in a roll of film that was presented to a Wal–Mart store for developing. 582 N.W.2d at 232–33. A Wal–Mart employee had a copy of the photo, and plaintiffs alleged that one or more copies of the photo were circulating in the community where they resided. *Id.* at 233. The suit against Wal–Mart claimed invasion of privacy. *Id.* The court in *Lake* was concerned about recognition of the right to privacy and defining categories of privacy.

Given the attention the Minnesota Supreme Court in *Lake* gave to the Restatement (Second) of Torts in recognizing a

common law right of privacy in our state, it is important to look to the Restatement. Comment a to section 652D states:

"Publicity," as it is used in this Section, differs from "publication," * * *. "Publication," * * * is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.

The Restatement gives illustrations of publicity. These include the following:

1. A, a creditor, writes a letter to the employer of B, his debtor, informing him that B owes the debt and will not pay it. This is not an invasion of B's privacy under this Section.

2. A, a creditor, posts in the window of his shop, where it is read by those passing by on the street, a statement that B owes a debt to him and has not paid it. This is an invasion of B's privacy.

3. A, a motion picture exhibitor, wishing to advertise a picture to be exhibited, writes letters to a thousand men in which he makes unprivileged and objectionable statements concerning the private life of B, an actress. This is an invasion of B's privacy.

The Restatement comment then continues:

While the cases to date allowing recovery for the type of invasion of privacy covered by this Section have been confined to the giving of publicity to the private matter, the courts may decide to extend the coverage to a simple disclosure. * * * It remains to be seen whether a disclosure not equivalent to the giving of publicity will be actionable when the obtaining of the information was not tortious in character.

Unfortunately, none of these three illustrations easily fits our factual situation. Appellants claim that illustration 2 is most appropriate. But illustration 2 is clearly a public display, and many people may have seen the window posting or no one may have looked at it. In this case, it is not alleged that the faxed memo was posted for the public to see. Dozens of people, however, may have seen the fax or obtained copies.

Prior to the *Lake* decision Minnesota avoided recognizing the right of privacy. Although the supreme court addressed the question of publicity in *Hendry v. Conner,* 303 Minn. 317, 226 N.W.2d 921 (1975), its status post *Lake* is doubtful. In *Hendry,* the plaintiff, a prospective hospital patient, was berated in the waiting room by a hospital employee for having discharged a debt owed to the hospital by filing for bankruptcy. *Id.* at 317–18, 226 N.W.2d at 922. Although a handful of people were in the waiting room and could have heard the critical bankruptcy comment, the court quoted the Restatement and stated that such *verbal* disclosures had to be heard by a larger number of people to be actionable. *Id.* at 317–19, 226 N.W.2d at 922–23. The court, however, proceeded to emphasize that the plaintiff's bankruptcy was not private information because bankruptcy filings are a matter of public record. *Id.* at 319, 226 N.W.2d at 923.

Another case arising in Minnesota bears mention. In *C.L.D. v. Wal–Mart Stores, Inc.,* 79 F.Supp.2d 1080 (D.Minn.1999), the federal district court in this state dealt with this issue. In that case, an employee had asked the assistant manager of the store for time off for medical purposes. *Id.* at 1082. In the context of that discussion the employee disclosed that she intended to obtain an abortion. *Id.* She

alleged that the assistant manager subsequently communicated this information about the abortion to three other employees of the store and that this was an actionable invasion of her privacy. *Id.* The federal district court determined that this was not sufficient publication to constitute invasion of privacy and relied heavily on parts of the discussion in the comment to section 652D of the Restatement (Second) of Torts. *Id.* at 1083–84. The federal court concluded that the disclosure must be to a "significantly large number of people that the public at large either knew or was substantially certain to become aware of it." *Id.* This is a high threshold. On our facts and with this standard, the district court in this case granted defendants' motion for summary judgment. Although of interest, the *C.L.D.* case does not limit the reach of the *Lake* decision nor does *C.L.D.* constrain this court from reaching an appropriate disposition in this or other cases.

Courts have indicated that the breadth of disclosure is related to the abuse of the right to privacy. In *McSurely v. McClellan,* 753 F.2d 88, 112 (D.C.Cir.1985), due to the delicacy of the situation, disclosure to one person—a spouse—was found to be adequate to support a claim. In *Bratt v. Int'l Bus Machines Corp.,* 392 Mass. 508, 467 N.E.2d 126, 134 (1984), the court held that an intracorporate communication could constitute sufficient publication.

In several cases, however, disclosure to a single person or a handful of people did not constitute sufficient publicity to support a claim for invasion of privacy. The Eighth Circuit Court of Appeals held that, under Arkansas law,

> the simple disclosure of private information to one other person, which is all that plaintiff could possibly prove here, is not sufficient to state a [publication of private facts] claim.

*Wood v. Nat'l Computer Sys. Inc.,* 814 F.2d 544, 545 (8th Cir.1987) (addressing situation where one teacher's certification scores were sent to another teacher). According to the United States District Court for the District of Utah, dissemination of private facts to an individual's employer, mother, and two siblings is insufficient "publicity" as well. *Jones v. U.S. Child Support Recovery,* 961 F.Supp. 1518, 1520–21 (D.Utah 1997). The United States District Court for the District of Nevada found that a creditor's telephone calls to no more than six co-workers of a debtor was not sufficient "publicity" of private information. *Kuhn v. Account Control Tech., Inc.,* 865 F.Supp. 1443, 1448 (D.Nev. 1994). *See also Davis v. Monsanto Co.,* 627 F.Supp. 418, 421–22 (S.D.W.Va.1986) (holding that employer telling two persons outside of management level of information regarding an employee's private mental health status was not the widespread publication required to establish a cause of action); *Porten v. Univ. of San Francisco,* 64 Cal.App.3d 825, 134 Cal.Rptr. 839, 841 (1976) (holding that the university's disclosure of a student's college transcript to the Scholarship and Loan Commission constituted a private communication to an individual or to a few people but not a communication to the public in general).

■ In this case, respondent faxed the social security numbers of 204 employees to 16 terminals in six states. Although addressed to the managers of these terminals, the number of persons who saw the fax is unknown. Fax transmissions typically lie in a tray. Ideally they are immediately picked up by the designated person or a trusted employee. The transmission, however, may be viewed and copied by any person in the vicinity of the machine. Once removed from the fax machine, the pages may be promptly filed or left on a counter available to any passerby to read

or copy, or even posted on a bulletin board. Traffic patterns in the office areas of 16 terminals are unknown. Although it is not clearly public as the Restatement uses the term, many more people may have seen the information than those that saw the window posting in illustration 2 of the Restatement, certainly more than heard or saw the information in the privacy cases just discussed.

Another key factor in determining whether the requisite publication has occurred is the nature of the private data and the damage. Social security numbers are not embarrassing personal-life details like an extramarital affair, nude photos, bad grades, an abortion, mental health problems, or financial difficulties depicted in many of the cited cases. Plainly, one does not want such tantalizing information publicized. Social security numbers are dry, sterile figures. But they are a private detail that enables the data voyeur to snoop or the thief to access financial details. A rash of identity theft incidents may flow from one disclosure. On the other hand, widespread dissemination of social security numbers within a business setting may not lead to any untoward results. Moreover, a person's bank account numbers, credit card numbers, personal identification numbers (PIN), and other similar identifiers may be considered just as sensitive as social security numbers. The damage is the substantial risk for misuse or illegal use of an individual's identity or financial information, not personal embarrassment.

In this social security number setting, the problem is that any unnecessary display or dissemination of the private data is a serious threat. The improper disclosure may be contained by corrective action, or it may be compounded by further dissemination. Many factors are relevant to the potential harm and what may be equitable.

An actionable situation requires a level of publication that unreasonably exposes the appellant to significant risk of loss under all the circumstances.

In this case, respondent's president quite appropriately instructed the terminal managers to return or destroy the social security number information. Possibly, they did this. At this stage in the litigation, however, we cannot assume his best intentions actually were carried out. If copies of the transmission had been made, retrieving all copies is difficult. If not properly contained at each of the 16 terminals, what was a modest circulation to 16 managers could easily be transformed into a widespread dissemination of the material.

At this stage in the litigation, it is impossible to determine what happened. Appellants, as employees and former employees, are in a difficult position to prove that respondent's dissemination unreasonably exposed them to a significant risk of loss. They know the transmission occurred. Their social security numbers were sent out. They have done nothing wrong. To place on them the burden of interviewing terminal managers and other employees at 16 locations in six states and the further burden of evaluating office traffic patterns around the fax machines, location of copy machines, practices in handling fax material and the risk of publicity is inappropriate. The party responsible for disseminating the numbers—the respondent in this case—should have the burden of showing not only that reasonable steps were taken to contain the risk of more widespread dissemination of social security numbers, but that in the physical settings of each terminal these steps were effective. The letter from respondent's president is certainly a step in the right direction. His statements, however, are couched in qualifying terms that provide no assurance that

the goal of correcting the situation was achieved. Through affidavits, depositions, or, if necessary, witnesses at a trial, respondent can easily define the practices in the terminals and what occurred with the information. That would shift the burden back to the appellants to show either widespread dissemination or improper use.

The district court is in the best position to determine whether actionable publication occurred. The publicity requirement in this case, where the dissemination was not for profit or with malicious intent, ought to be whether it unreasonably exposed appellants to a significant risk that their social security numbers would be misused.

**Record**

Respondent argues that this court should not consider six documents in appellants' appendix because appellants did not present them to the district court. Because the six articles were not germane to our decision, we decline to address this issue.

## DECISION

The district court's dismissal of appellants' complaint alleging a violation of their right to privacy is reversed, and the case is remanded for further proceedings consistent with this opinion.

**Reversed and remanded.**