**David Brian SWARTHOUT, Appellant,**

v.

**MUTUAL SERVICE LIFE INSURANCE COMPANY, Respondent.**

**No. CX–01–201.**

Court of Appeals of Minnesota.

Aug. 7, 2001.

Steve G. Heikens, Minneapolis, for appellant.

Doreen Agnes Mohs, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, STONEBURNER, and LINDBERG, Judges.

## OPINION

LINDBERG, Judge.*

In the process of investigating the possible purchase of an annuity and some insurance from respondent Mutual Service Life Insurance Co. (MSI), appellant David Swarthout signed a release allowing MSI to obtain medical information about him from one doctor. MSI altered the release to acquire additional information from a second doctor and from a clinic. After obtaining information about Swarthout from those sources, MSI transmitted the information to a medical-records database, the content of which was available to all subscribing insurers. Swarthout sued MSI on several theories, including violations of (a) his right to seclusion; (b) Minn. Stat. § 144.335 regarding access to medical records; (c) the Consumer Fraud Act; and (d) the prohibition on fraudulent misrepresentation. The district court, in two partial summary judgment orders, granted MSI summary judgment on these claims. We affirm the district court's ruling on the questions of consumer fraud and fraudulent misrepresentation. We reverse and remand, however, on Swarthout's claims for intrusion upon seclusion and for a violation of Minn.Stat. § 144.335.

## FACTS

In 1997, Swarthout investigated purchasing life insurance and an investment

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

vehicle from MSI. The agent with whom Swarthout dealt was trainee-agent Steve Jordan, a man Swarthout had known for several years. In making his applications to MSI, Swarthout signed a release allowing MSI to obtain medical information about himself from one doctor. Swarthout ultimately bought an annuity but not insurance from MSI.

After Swarthout's release was sent to MSI's office, MSI employees (not including Jordan) added the name of another doctor and of a clinic to the release. MSI then obtained medical information about Swarthout from all three sources. The information showed, among other things, that Swarthout had high blood pressure. MSI later transmitted the medical information it had acquired about Swarthout to the Medical Information Bureau, a medical-information database shared by subscribing insurers.

When Swarthout learned MSI had altered his release and acquired medical information about him without his permission, he sued on various theories, including fraudulent misrepresentation and violations of his right to seclusion, of Minn.Stat. § 144.335 regarding access to medical records, and of the Consumer Fraud Act. By partial summary judgment rulings in April 1999 and April 2000 on these claims, the district court granted MSI summary judgment. The district court ruled that Swarthout had failed to show the damages necessary to support a fraudulent-misrepresentation claim, that the disclosure of Swarthout's medical information did not meet the "highly offensive" threshold necessary to support a claim of invasion of his right to seclusion, that Minn.Stat. § 144.335 was inapplicable because this case lacked a doctor-patient relationship, that the lack of a sale of insurance precluded application of the Consumer Fraud Act, and that Swarthout had failed to show the

damages necessary to support a CFA violation regarding the annuity. Swarthout appeals.

## ISSUES

1. Did the district court err in granting summary judgment on Swarthout's claim that MSI violated his right to seclusion?

2. Does Minn.Stat. § 144.335 apply to MSI?

3. Is the Consumer Fraud Act applicable here?

4. Did Swarthout show the damages necessary to support a fraudulent-misrepresentation claim?

## ANALYSIS

On appeal from a summary judgment, appellate courts ask (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). A reviewing court views the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

### I.

The Restatement (Second) of Torts, § 652(b) (1977), states:

> One who intentionally intrudes, physically or otherwise, upon the solicitude of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Minnesota adopted this tort, known as intrusion upon seclusion, in 1998. *Lake v. Wal–Mart Stores, Inc.*, 582 N.W.2d 231 (Minn.1998). The tort has three elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of pri-

vacy. *E.g., Fletcher v. Price Chopper Foods,* 220 F.3d 871, 875 (8th Cir.2000). There is

> no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable [person], as the result of conduct to which the reasonable [person] would strongly object.

Restatement (Second) of Torts, § 652(b) cmt. d (1977). In the context of intrusion upon seclusion, questions about

> the reasonable person standard are ordinarily questions of fact, * * * but they become questions of law if reasonable persons can draw only one conclusion from the evidence.

*Hougum v. Valley Mem. Homes,* 574 N.W.2d 812, 818 (N.D.1998) (citations omitted).

■ Here, the district court granted MSI summary judgment on Swarthout's claim of intrusion upon seclusion, stating:

> [T]he Court does not believe the disclosure of [Swarthout's] blood pressure medication prescription rises to the threshold level of being "highly offensive to a reasonable person." Certainly, a person seeking health related insurance must expect such disclosures[1].

At his deposition, Swarthout stated that he did not want to preclude MSI from getting information from the sources MSI added to his release, he only wanted to be informed if MSI got that information. He also stated that if MSI had given him a release for the doctor MSI added to the release, he would have signed it and that he could not say whether he would have signed a release for the clinic MSI added to the release. Use of improper methods

to obtain information does not necessarily satisfy the "highly offensive" prong of the intrusion-upon-seclusion analysis where the information in question could be obtained by a different, proper manner. *See Fletcher,* 220 F.3d at 876 (noting Kansas Supreme Court holds that, as a matter of law, "unauthorized release of medical information does *not* constitute highly offensive conduct when that information could have been obtained by proper means" (citing *Werner v. Kliewer,* 238 Kan. 289, 710 P.2d 1250, 1255–56 (1985))).

Here, after Jordan made representations to Swarthout and Swarthout signed a limited release based at least partially on those representations, MSI altered the release, presented the altered release to various entities as if it had been signed by Swarthout, and obtained medical information about Swarthout from those entities. MSI then took the illicitly obtained information and posted it in a medical-insurance database, making it available to other insurance companies. Viewing this record in the light most favorable to Swarthout we cannot say that, as a matter of law, the altering of Swarthout's release and the illicit obtaining, conveying, and publicizing of his private medical information was not the "substantial" and "highly offensive" intrusion upon Swarthout's seclusion that would satisfy the three-prong test for the tort of intrusion upon seclusion. Cf. Restatement (Second) of Torts § 652(b), illus. 4 (stating party's use of forged court order to obtain opposing party's bank records would constitute invasion of privacy). Therefore we reverse the grant of summary judgment on the question of intrusion upon seclusion and remand for further proceedings.

---

1. Much of Swarthout's discussion of intrusion upon seclusion addresses whether there was an intrusion and whether he had a legitimate expectation of privacy. The district court, however, did not address those points.

## II.

■■■ Swarthout sought relief under Minn.Stat. § 144.335, subd. 3a(e) (2000). The district court ruled that this statute did not apply to MSI because it applied to "health providers" with respect to their patients, because *Saari v. Litman*, 486 N.W.2d 813 (Minn.App.1992), requires a doctor-patient relationship for Minn.Stat. § 144.355, subd. 3a(e), to be applicable, and because the relevant law was actually that of Minn.Stat. §§ 72A.493, .501–504 (2000). Statutory construction is reviewed de novo. *In re Improvement of Murray County Ditch No. 34*, 615 N.W.2d 40, 45 (Minn.2000) (citing authorities). When construing a statute, the object of doing so is to effectuate legislative intent and the statute's entire text is examined to give effect to all of its provisions. *Id.* at 45–46.

Section 72A.497, subd. 3(c) (2000), addresses access to personal information and health records and states that nothing therein "may reduce or affect a patient's rights under section 144.335." Thus, the (assumed) applicability of Minn.Stat. §§ 72A.493–.501–04 does not render Minn.Stat. § 144.335, subd. 3 inapplicable.

*Saari*, which holds that the existence of a doctor-patient relationship is assumed by Minn.Stat. § 144.335, addresses the 1990 version of the statute. *Saari*, 486 N.W.2d at 814. In 1991, the statute was amended to include the provision at issue here. *See* 1991 Minn. Laws ch. 319, § 15 (enacting Minn.Stat. § 144.335, subd. 3a(c) (Supp. 1991)); 1992 Minn. Laws ch. 569, § 9 (renumbering Minn.Stat. § 144.335, subd. 3a(c) as Minn.Stat. § 144.335, subd. 3a(e)). That provision states:

> A *person* who negligently or intentionally releases a health record in violation of this subdivision, or who forges a signature on a consent form, or who obtains under false pretenses the consent form or health records of another *person*, or who, without the *person's* consent, alters a consent form, is liable to the *patient* for compensatory damages caused by an unauthorized release, plus costs and reasonable attorney's fees.

Minn.Stat. § 144.335, subd. 3a(e) (emphasis added). In relevant part, "patient" is defined as a "natural person" who has received "health care services." Minn. Stat. § 144.335, subd. 1(a) (2000). Because Swarthout fits this definition, he is a patient who may be able to recover under the statute. Therefore, the question becomes whether MSI and Swarthout are "persons" who sought medical records and whose medical records were sought under this statute. While Minn.Stat. § 144.335 does not define "person," "[p]erson" is generally defined to include natural persons and corporate bodies. Minn.Stat. § 645.44, subd. 7 (2000). MSI is a corporate body, Swarthout is a natural person, and the preface to the definitions in Minn.Stat. § 645.44 (2000) states that the terms defined therein "shall" have the meanings given therein, "unless another intention clearly appears." Minn.Stat. § 645.44, subd. 1; *see* Minn. Stat. § 645.44, subd. 16 (2000) (stating " '[s]hall' is mandatory"). Because MSI and Swarthout fit the relevant definitions, and because Minn.Stat. § 144.335, subd. 3a(e) post-dates the version of the statute construed in *Saari*, we cannot say that the existence of a doctor-patient relationship is required by Minn.Stat. § 144.335, subd. 3a(e).

■■■ Swarthout also argues that MSI is liable for improperly releasing his records under Minn.Stat. § 144.335, subd. 3a(a). The district court, however, did not address that provision, it is not properly before this court, and we decline to address it. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating, generally, appellate courts address only issues presented to and decided by district court,

party may not raise new issue on appeal, and party may not, on appeal, argue issue presented to district court on theory not presented to the district court.) [2].

## III.

■ The district court rejected Swarthout's claim that MSI violated the Consumer Fraud Act, stating the CFA requires a sale and Swarthout's failure to buy life insurance was "fatal" to his CFA claim. While Swarthout alleges that an "attempted sale" is sufficient to invoke the CFA, MSI alleges Swarthout waived this argument by not citing any authority to this court or to the district court. Under *Schoepke v. Alexander Smith & Sons Carpet Co.,* 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971),

> [a]n assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection.

(Citations omitted.)

Here, mere inspection of the CFA shows that fraudulent conduct is prohibited "in connection with the sale of any merchandise, whether or not any person has been in fact misled, deceived, or damaged thereby." Minn.Stat. § 325F.69, subd. 1 (2000). "Sale" includes an "attempt to sell any merchandise for any consideration." Minn.Stat. § 325F.68, subd. 4 (2000). Therefore, Swarthout's failure to cite any authority did not waive his argument and the lack of a sale was not necessarily fatal to his CFA claim.

■ After reciting the evidence on which Swarthout relied to avoid summary

judgment, the district court stated that "[t]here is no testimony by anyone yet identified by [Swarthout] that Jordan misrepresented the earning potential of any investment vehicle, *or committed any fraudulent act.*" (Emphasis added.) Because Swarthout's argument to this court is limited to whether the parties' relationship involved a sale or an attempted sale, he has not challenged the determination that Jordan's conduct did not involve any fraud. And the district court's ruling on this point is consistent with the fact that, Jordan's statements were rendered false (if at all) only *after* they were made, when other MSI employees altered Swarthout's release. Therefore, we affirm the grant of summary judgment on Swarthout's CFA claim.

## IV.

■ The district court granted MSI summary judgment on Swarthout's fraudulent-misrepresentation claim because Swarthout failed to show damages. For purposes of summary judgment, the district court assumed Swarthout had satisfied all of the non-damage elements of his claim. Swarthout notes that, generally, fraud damages are the defrauded person's out-of-pocket losses but that this measure of damages "does not work well" where the defrauding party's conduct prevents the defrauded party from protecting himself. The crux of Swarthout's damage claim on appeal is that he was allegedly improperly rated for insurance purposes. The district court rejected this assertion, stating

> there is no evidence [Swarthout] was ever rated (despite explicit instructions

2. While Minn. R. Civ.App. P. 103.04 states that an appellate court may address any issue "as the interest of justice requires[,]" the 1998 amendment to that rule requires consideration of whether "proper steps have been taken to preserve issues for review on ap-

peal." Because the applicability of Minn. Stat. § 144.335, subd. 3a(a), was not properly preserved, we decline to exercise our discretion under rule 103.04 to address the question.

from this court [that evidence of such a rating be produced]), or that [Swarthout] ever paid an inflated premium.

■ Without having mentioned the question in his brief on the merits, Swarthout's reply brief alleges that the deposition of MSI's doctor addressed Swarthout's insurance rating. Issues are not properly before this court when they are raised for the first time in a reply brief. *McIntire v. State,* 458 N.W.2d 714, 717 n. 2 (Minn.App. 1990), *review denied* (Minn. Sept. 28, 1990); *see Balder v. Haley,* 399 N.W.2d 77, 80 (Minn.1987) (holding issues not briefed are waived). While Swarthout cites discovery materials to support his allegation that he was rated, discovery materials are not generally included in a district court file and no discovery materials are listed on the index to this district court file. *Cf.* Minn. R. Civ. P. 5.04 (excluding responses to requests for documents from filing requirement unless district court orders otherwise). Absent the evidence to which Swarthout refers, we cannot review the district court's ruling on this point.

### DECISION

Because fact issues exist regarding Swarthout's claim for intrusion upon seclusion and because a doctor-patient relationship is not required for application of Minn.Stat. § 144.335, subd. 3a(e) (2000), we reverse the district court's grant of summary judgment on these issues and remand for further proceedings. We affirm the district court's grant of summary judgment on the questions of the Consumer Fraud Act and fraudulent misrepresentation. We express no opinion on how to decide the remanded issues.

**Affirmed in part, reversed in part, and remanded.**