**Jennie Marie LOEFFLER, Plaintiff,**

**v.**

**CITY OF ANOKA, et al., Defendants.**

**Civil No. 13–cv–2060 (MJD/TNL).**

United States District Court,
D. Minnesota.

Signed Jan. 12, 2015.

Lorenz F. Fett, Jr., Sonia L. Miller–Van Oort, and Jonathan A. Strauss, Sapientia Law Group PLLC, Minneapolis, MN, for Plaintiff.

Portia M. Hampton–Flowers, St. Paul City Attorney, St. Paul, MN, for Defendant City of St. Paul.

Timothy S. Skarda, Minneapolis City Attorney's Office, Minneapolis, MN, for Defendant City of Minneapolis.

## ORDER

MICHAEL J. DAVIS, Chief Judge.

Based upon the Report and Recommendation by United States Magistrate Judge Tony N. Leung dated December 19, 2014 [Docket No. 126], along with all the files and records, and no objections to said Recommendation having been filed, **IT IS HEREBY ORDERED** that:

1. Defendant City of Saint Paul's Motions for Judgment on the Pleadings, Summary Judgment and Motion to Sever [Docket No. 79] is **GRANTED IN PART** and **DENIED IN PART AS MOOT.**

2. Defendant City of Minneapolis' Motion for Judgment on the Pleadings, Summary Judgment and Motion to Sever [Docket No. 87] is **GRANTED IN PART** and **DENIED IN PART AS MOOT.**

## REPORT & RECOMMENDATION

TONY N. LEUNG, United States Magistrate Judge.

### I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on alternative motions for judgment on the pleadings, summary judgment, and motions to sever brought by Defendants City of St. Paul ("St. Paul") (ECF No. 79) and City of Minneapolis ("Minneapolis") (ECF No. 87) (collectively, "Cities"). These motions have been referred to the undersigned magistrate judge for a report and recommendation to the district court, the

Honorable Michael J. Davis, Chief District Judge of the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(b). (ECF Nos. 85, 92.)

A hearing was held. Sonia L. Miller–Van Oort appeared on behalf of Plaintiff. (ECF No. 101.) Portia Hampton–Flowers appeared on behalf of St. Paul. (*Id.*) Timothy S. Skarda appeared on behalf of Minneapolis. (*Id.*)

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant City of Saint Paul's Motions for Judgment on the Pleadings, Summary Judgment and Motion to Sever (ECF No. 79) be **GRANTED IN PART** and **DENIED IN PART AS MOOT,** and Defendant City of Minneapolis's Motion for Judgment on the Pleadings, Summary Judgment and Motion to Sever (ECF No. 87) be **GRANTED IN PART** and **DENIED IN PART AS MOOT.**

### II. BACKGROUND [1]

Plaintiff brings claims under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq.;* 42 U.S.C. § 1983; and common law based on accesses of her personal and private driver's license information. (Compl. ¶¶ 6, 179–205, 224–77, ECF No. 1.) This action is one of several actions filed in this District alleging unlawful access of private data. *See, e.g., Kiminski v. Hunt,* File No. 13–cv–185 (JNE/TNL) (consolidated cases); *Kost v. Hunt,* File No. 13–cv–583 (JNE/TNL);

---

1. The same standard that governs a motion to dismiss for failure to state a claim governs a motion for judgment on the pleadings. *Bass v. Anoka Cnty.,* 998 F.Supp.2d 813, 818–19 (D.Minn.2014). Thus, "a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v.* *Iowa,* 752 F.3d 725, 727 (8th Cir.2014); *accord Rasmusson v. Chisago Cnty.,* 991 F.Supp.2d 1065, 1070 (D.Minn.2014) ("When evaluating a motion to dismiss, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff.").

*Potocnik v. Anoka Cnty.*, File No. 13–cv–1103 (DSD/TNL) (Ltr. to Hon. Michael J. Davis, Mar. 25, 2014, listing pending DPPA cases (ECF No. 98)).

## A. The Database & Records Maintained

On June 24, 2014, this Court issued a report and recommendation ("R & R") regarding several dispositive motions filed by other defendants in this matter. (ECF No. 102.) The Court incorporates by reference Section II of the R & R addressing the nature of the database containing the information at issue and the records maintained therein; the extramarital affair of Plaintiff's then-husband and events leading to Plaintiff's discovery of the alleged impermissible accesses of her information; and the overall history of this litigation.

## B. Accesses of Plaintiff's Information

Plaintiff alleges that "[o]fficers employed by, licensed by, or otherwise accessing through the City of St. Paul impermissibly accessed [her p]rivate [d]ata four times," and that "[o]fficers employed by, licensed by, or otherwise accessing through the City of Minneapolis impermissibly accessed [her p]rivate [d]ata · nine times." (Compl. ¶¶ 81, 91.)

## C. Litigation

Plaintiff's claims against the Cities arise under the DPPA, 42 U.S.C. § 1983, and common law. In Count I, Plaintiff alleges the Cities violated the DPPA. (*Id.* ¶¶ 179–205.) In Count II, Plaintiff alleges, via § 1983, that individual employees of the Cities violated her rights under the Fourth and Fourteenth Amendments. (*Id.* ¶¶ 206–23.) In Count III, Plaintiff alleges, via § 1983, that the Cities were aware of the widespread access of private data for personal use; such use was against regulations promulgated by the Cities; and the

Cities' pervasive failure to take action to stop or prevent such use (including the failure to properly train, monitor, supervise, and properly discipline) amounted to deliberate indifference to Plaintiff's constitutional rights. (*Id.* ¶¶ 224–46.) Finally, in Count VI, Plaintiff alleges the Cities invaded her privacy under common law. (*Id.* ¶¶ 272–77.)

## III. STANDARD OF REVIEW

The Cities have moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c). The granting of a 12(c) motion is appropriate when the movant has shown that "no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir.2008) (quotation omitted). A motion for judgment on the pleadings is treated under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Bass*, 998 F.Supp.2d at 818–19; *accord Mitchell v. Aitkin Cnty.*, No. 13–cv–2167 (JNE/FLN), 2014 WL 835129, at *3 (D.Minn. Mar. 4, 2014). "To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir.2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir.2012) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("[T]he pleading standard Rule 8 an-

nounces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.''). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In deciding a motion for judgment on the pleadings, a court "view[s] all facts pleaded by the nonmoving party as true and grant[s] all reasonable inferences in favor of that party" just as it would in deciding a motion to dismiss under Rule 12(b)(6). *Poehl*, 528 F.3d at 1096; *see Rasmusson*, 991 F.Supp.2d at 1070.

## IV. MOTIONS FOR JUDGMENT ON THE PLEADINGS

Plaintiff's allegations against the Cities encompass three types of defendants: the Cities themselves; their employees, including law enforcement; and supervisors employed by the Cities. (Compl. ¶¶ 31, 38, 44–46.) As noted earlier, Plaintiff alleges that "[o]fficers employed by, licensed by, or otherwise accessing through [the Cities] impermissibly accessed [her p]rivate [d]ata." (*Id.* ¶¶ 81, 91; *see also id.* ¶ 136.) Plaintiff alleges that there were four accesses by St. Paul and nine[2] by Minneapolis. (*Id.* ¶¶ 81, 91.) Plaintiff alleges that such accesses occurred by "view[ing] her p]rivate [d]ata from her [s]tate-issued driver's license including her home address, color photograph or image, date of

birth, eye color, height, weight and driver identification number." (*Id.* ¶ 96.) Plaintiff alleges that these accesses occurred by entering her name into the database, "not her license plate number, to look up her private, personal information." (*Id.* ¶ 137.) Plaintiff alleges that the "accesses were impermissible, meaning that the [Cities] had no law-enforcement reason for accessing the information" and that the [Cities'] employees "accessed the information for personal reasons completely unrelated to their position as law-enforcement officers." (*Id.* ¶ 95; *see id.* ¶¶ 158, 188–90.) Plaintiff further alleges that the Cities' supervisors "should have monitored, prevented and stopped the unauthorized access [of Plaintiff's] information" by the Cities' employees. (*Id.* ¶ 139.) Plaintiff also alleges that the Cities and their supervisors "permitted, condoned, or acquiesced in this illegal access to Plaintiff's private information, and knew or should have known that it was occurring." (*Id.* ¶ 145; *see also id.* ¶¶ 144, 192.) Because the Cities' arguments for judgment on the pleadings are identical, the Court will analyze them together. (*See* St. Paul's Mem. in Supp. at 1, ECF No. 82; Minneapolis's Mem. in Supp. at 1, ECF No. 89.)

### A. Statutes of Limitation

■ The Court begins with the Cities' argument that Plaintiff's claims are time-barred.[3] (St. Paul's Mem. in Supp. at 4; Minneapolis's Mem. in Supp. at 4.) "A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred." *Illig v. Union*

---

**2.** While the Complaint and its attached Exhibit A allege nine accesses of Plaintiff's private data by Minneapolis, (Compl. ¶ 81, Ex. A, ECF No. 1–1), Plaintiff later provided a list to Minneapolis showing ten accesses of her private data, (Ex. 2 to Aff. of Timothy S. Skarda, ECF No. 90–2.)

**3.** Minneapolis concedes that the three accesses allegedly occurring on January 6, 2010, are not time-barred. (Minneapolis's Mem. in Supp. at 1, 4.)

*Elec. Co.,* 652 F.3d 971, 976 (8th Cir.2011). The Cities point out that "the Complaint contains no reference to the actual date or dates to which the St. Paul [and Minneapolis] entries are attributed." (St. Paul's Mem. in Supp. at 7; Minneapolis's Mem. in Supp. at 6.)

As this Court previously observed in its R & R, attached to Plaintiff's Complaint as Exhibit A is a copy of an audit prepared by DPS showing accesses of Plaintiff's information. (R & R at 39; Compl. ¶ 3, Ex. A.) While Exhibit A includes the day of the alleged access in the "AccessDay" column, the "AccessDate" column is curiously blank. (Ex. A to Compl.) Plaintiff, subsequent to asserting claims against the Cities, provided each of the Cities with separate spreadsheets showing the dates and times of the alleged accesses of Plaintiff's driver's license information. (Aff. of Portia Hampton–Flowers ¶ 4, ECF No. 83; Aff. of Timothy S. Skarda ¶ 3, ECF No. 90; *see* Ex. B to Hampton–Flowers Aff., ECF No. 83–1; Ex. 2 to Skarda Aff.) These spreadsheets were included as exhibits by the Cities in support of their respective motions. (Ex. B to Hampton–Flowers Aff.; Ex. 2 to Skarda Aff.)

■■■ The question, therefore, is whether the Court will consider these supplemental spreadsheets. When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999). The court may, however, "consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Id.* (quotations and citation omitted); *see also Illig,* 652 F.3d at 976 ("In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." (quotation omitted)). "[D]ocuments 'necessarily embraced by the complaint' are not matters outside the pleading." *Enervations, Inc. v. Minn. Mining & Mfg. Co.,* 380 F.3d 1066, 1069 (8th Cir.2004). "[T]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. United States Dep't of Agric.,* 327 F.3d 697, 701 (8th Cir.2003) (quotation omitted).

■■■ The Court exercises its discretion not to consider the spreadsheets submitted in support of the Cities' motions for judgment on the pleadings.[4] Notably, St. Paul's Exhibit B and Minneapolis's Exhibit 2 are *not* just more complete versions of the Complaint's Exhibit A. According to Exhibit B, the four alleged accesses by St. Paul occurred on *different* days than the accesses listed in Exhibit A. Exhibit A shows two alleged accesses occurring on Sundays, one occurring on a Tuesday, and another occurring on a Saturday. (Ex. A to Compl.) Exhibit B shows all four accesses occurring on a Tuesday. (Ex. B to Hampton–Flowers Aff.) Similarly, according to Minneapolis's Exhibit 2, the nine alleged accesses also occurred on *different* days than those listed in Exhibit A. Exhibit A shows one alleged access occurring on a Monday, two occurring on a Wednesday, two occurring on a Thursday, one occurring on a Sunday, and the remaining three occurring on a Tuesday. (Ex. A to Compl.) Exhibit 2, however, shows four

---

4. This applies with equal force to any other exhibits submitted in connection with the instant motions as well as those exhibits that could be considered incorporated by reference by the parties in incorporating arguments made elsewhere. *See, e.g., infra* Section IV(C) (reliance by Plaintiff on opposition arguments made elsewhere).

alleged accesses occurring on two separate Mondays, two alleged accesses occurring on two separate Fridays, and four alleged accesses occurring on two separate Wednesdays. (Ex. 2 to Skarda Aff.) Plaintiff offers no explanation for these discrepancies. Significantly, because the Court concludes that Plaintiff has failed to state a claim against the Cities for the reasons discussed below, the actual date of the alleged accesses is irrelevant.

Moreover, the statutes-of-limitation issues are more complicated[5] in this case based on Plaintiff's allegations that she initially contacted DPS in 2011 to determine whether her private data had been accessed and was told by DPS "that such information regarding the [database] could not be provided to [her] unless she had a specific reason for requesting that information." (Compl. ¶ 57.) Plaintiff subsequently contacted DPS again approximately two years later and was provided with the audit that led to the instant lawsuit. (Id. ¶¶ 60–62.) Because the Court need not determine precisely when the alleged accesses occurred in order to resolve the matters raised in the Cities' motions, the Court declines to address any arguments pertaining to statutes of limitation.

## B. DPPA

The Cities' primary argument is that "[t]here are simply no facts alleged in Plaintiff's Complaint that raise a plausible inference of an impermissible use by [the Cities] or any of [their] employees." (St. Paul's Mem. in Supp. at 11; Minneapolis's Mem. in Supp. at 10.) The Cities argue that the mere viewing of private data, without more, is not actionable under the DPPA. (St. Paul's Mem. in Supp. at 9–10;

Minneapolis's Mem. in Supp. at 9–10.) According to the Cities, "[t]he Complaint is silent as to how or why any access by [the Cities] was impermissible." (St. Paul's Mem. in Supp. at 10; Minneapolis's Mem. in Supp. at 10.) In addition, the Cities also point out that the Complaint does not include the dates and times of the alleged accesses. (St. Paul's Mem. in Supp. at 10; Minneapolis's Mem. in Supp. at 10.)

Plaintiff responds by focusing on section 2721(b)(1), which provides that private data may be disclosed "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1). (Pl.'s Mem. in Opp'n to St. Paul at 4, ECF No. 93; accord Pl.'s Mem. in Opp'n to Minneapolis at 2, ECF No. 97.) Plaintiff asserts that, in order to state a claim under the DPPA, she does not carry the burden of proving information was accessed for an impermissible purpose, but rather she "must allege that for whatever purpose Defendant obtained the information, it was not done by the agency in carrying out its *functions.*" (Pl.'s Mem. in Opp'n to St. Paul at 4 (quotation omitted); accord Pl.'s Mem. in Opp'n to Minneapolis at 2.) Plaintiff contends that she "need not allege a specific purpose, only that for whatever purpose Defendant obtained or used her information, it was not a permitted purpose under the statute." (Pl.'s Mem. in Opp'n to St. Paul at 4; accord Pl.'s Mem. in Opp'n to Minneapolis at 2.) Relying on *Mallak v. Aitkin County,* 9 F.Supp.3d 1046 (D.Minn. 2014), Plaintiff argues that "the DPPA's 'obtain' requirement is satisfied by simply

---

**5.** Such complexity is evidenced in part by the fact that Plaintiff devotes over 50% of her memorandum in opposition to statutes-of-limitation issues. (*See* Pl.'s Mem. in Opp'n to St.

Paul at 16–40, ECF No. 93; Pl.'s Mem. in Opp'n to Minneapolis at 2, ECF No. 97; *see also* R & R at 40 n. 7.)

'viewing' or 'accessing' the information." (Pl.'s Mem. in Opp'n to St. Paul at 4; *accord* Pl.'s Mem. in Opp'n to Minneapolis at 2.)

 "To state a claim under the DPPA, a plaintiff must allege that: (1) a defendant knowingly obtained, disclosed or used personal information; (2) from a motor vehicle record; (3) for a purpose not permitted." *Mallak*, 9 F.Supp.3d at 1055. This Court need not consider the precise contours of what constitutes knowingly obtaining, disclosing, or using private data, however, because Plaintiff has not alleged that any disclosure by the Cities was knowingly for a purpose not permitted under the DPPA. Thus, for the reasons stated in Sections III(A)(1)(b) and III(B)(2) of this Court's prior R & R, which are incorporated by reference herein, the Court concludes that Plaintiff has failed to state a DPPA claim against the Cities. (*See* R & R at 18–21, 44–47.)

 It bears repeating that, based on a plain reading of the DPPA, a defendant cannot be held liable unless he has "obtain[ed], dislos[ed], or us[ed] personal information, *knowing that it is for a purpose other than one of the permissible purposes.*" *Kiminski v. Hunt*, No. 13–cv–185 (JNE/TNL), 2013 WL 6872425, at *6 (D.Minn. Sept. 20, 2013) (emphasis added). In other words, "the person who obtains, discloses, or uses the information must do so *for* an impermissible purpose." *Id.; accord Mallak*, 9 F.Supp.3d at 1057 ("[T]he Court agrees with Defendants and other courts in this district that to state a claim under the DPPA, a plaintiff must allege that the information was obtained for a purpose not permitted.").

Plaintiff alleges the same facts against the Cities as she has against other counties and cities. (*See generally* Compl.) Plaintiff offers no new arguments as to the sufficiency of the allegations pleaded in response to the Cities' motions. Plaintiff globally alleges that all defendants and their personnel accessed her private data for "personal reasons" unrelated to law enforcement functions or any of the DPPA's other permissible uses. (Compl. ¶¶ 95, 188–89.) But fundamentally, "[Plaintiff's] DPPA claims ... relate to particular retrievals of her personal information by individual officers. Her claims against them need to be assessed individually and separately. [Plaintiff] therefore needs to allege facts reflecting the impropriety of the data retrieval by each individual officer to raise her claim against the officer above a speculative level." *Mitchell*, 2014 WL 835129, at *6 (citation omitted); *accord Traub v. City of St. Paul*, No. 13–cv–3017 (MJD/JJK), 2014 WL 2881484, at *4 (D.Minn. June 25, 2014) ("Facts evidencing impropriety as to each individual access must be alleged separately to rise above the level of speculation."); *see also Kost v. Hunt*, 983 F.Supp.2d 1121, 1134 (D.Minn.2013) (*Kost II*) ("[A]lthough Plaintiffs have sued Defendants in a single action, Plaintiffs' claims against each Moving Defendant must be evaluated independently.").

Plaintiff has alleged no facts showing that the Cities knowingly disclosed her private data for an impermissible purpose under the DPPA. Nor do Plaintiff's allegations permit the Court to reasonably infer an impermissible purpose on behalf of the Cities. As the Court earlier observed, Plaintiff is asking the Court to speculate as to the purpose of the Cities' and their personnel in accessing her private data. (*See* R & R at 17–21, 41–47, 55–62, 67, 76–77.) Plaintiff's general allegations "do not reflect an outward manifestation of the alleged impermissible purpose" of the Cities and their personnel in accessing her information. *Mitchell*, 2014 WL 835129, at *6.

Plaintiff contends that she "puts forth sufficient allegations, when considered cumulatively, to raise a reasonable expectation that discovery will reveal evidence of [a DPPA claim]." (Pl.'s Mem. in Opp'n to St. Paul at 8–9 (alteration in original) (quotation omitted); *accord* Pl.'s Mem. in Opp'n to Minneapolis at 2.) To support her allegations against the Cities, Plaintiff cites the following facts: (1) she has not been under investigation, "nor has she committed any crimes in [the Cities'] jurisdiction[s]"; (2) she "is ... well-connected to law enforcement by her marriage to another officer"; and (3) "[her] information was regularly obtained at odd hours of night and early morning." (Pl.'s Mem. in Opp'n to St. Paul at 8–9; *accord* Pl.'s Mem. in Opp'n to Minneapolis at 2.) Plaintiff urges that these facts "lead to the inescapable inference that none of the incidents alleged in the Complaint were for a fulfillment of any law-enforcement purpose." (Pl.'s Mem. in Opp'n to St. Paul at 9; *accord* Pl.'s Mem. in Opp'n to Minneapolis at 2.)

▪▪▪ As for Plaintiff's argument that she is well-connected with the law enforcement community, the Court incorporates by reference the analysis contained on pages 45 and 60 of the R & R addressing DPPA allegations against Dakota County and other county defendants. In her memorandum in opposition, Plaintiff asserts that she was "well-connected" to law enforcement and has a "high profile" in that community. (Pl.'s Mem. in Opp'n to St. Paul at 8, 9; *accord* Pl.'s Mem. in Opp'n to Minneapolis at 2.) But, other than her prior marriage to a law enforcement officer, Plaintiff has pleaded no facts showing that she was well-known in that community as a whole and, therefore, only through speculation would the Court be able to infer that the alleged impermissible accesses by *these defen-*

*dants* occurred due to any notoriety Plaintiff may have had in the law-enforcement community. *Cf. Kampschroer v. Anoka Cnty.*, No. 13–cv–2512 (SRN/TNL), 57 F.Supp.3d 1124, 1139–40, 2014 WL 5530590, at *10 (D.Minn. Nov. 3, 2014) ("Plaintiffs are local media personalities in Minnesota who, during their career in television news, have met and interviewed numerous law-enforcement personnel."); *Heglund v. Aitkin Cnty.*, No. 14–cv–296 (ADM/LIB), 2014 WL 4414821, at *6 (D.Minn. Sept. 5, 2014) ("majority" of alleged accesses of private data occurred in jurisdiction where plaintiff was "best known" and worked as a law-enforcement officer). "[P]laintiff is entitled to all reasonable inferences, but a reasonable inference is one that may be made without resort to speculation." *Traub*, 2014 WL 2881484, at *4. Thus, for the reasons stated in the Court's prior R & R, the Court finds no basis to infer that Plaintiff had any connection with law enforcement officers employed by the Cities. Absent a connection between Plaintiff and any law enforcement officer employed by the Cities, the Court must find that "[Plaintiff's] allegations are insufficient to state a claim under the DPPA." *Ray v. Anoka Cnty.*, 24 F.Supp.3d 843, 849 (D.Minn.2014); *see also Jessen v. Blue Earth Cnty.*, No. 14–cv–1065 (RHK/TNL), 2014 WL 5106870, at *6 (D.Minn. Oct. 10, 2014) ("And Plaintiffs do not suffer the same fate as the plaintiff in *Ray v. Anoka County*, who failed to allege a connection between the unnamed defendant, who she speculated was her ex-husband, and the jurisdictions from which her records were accessed." (citing 24 F.Supp.3d at 848–49)); *Traub*, 2014 WL 2881484, at *5 (suggesting a "court could draw the reasonable inference that the defendant may be liable under the DPPA for the misconduct of viewing the personal data for an impermissible purpose ... where there is a sufficient indication of a

connection or interaction between the law enforcement officer and the plaintiff, from which the impropriety could plausibly be inferred"). "Further, in the absence of clear evidence to the contrary, the courts presume that public officers have properly discharged their official duties." *Ray,* 24 F.Supp.3d at 849 (quotation omitted).

Based on the foregoing, the Court concludes that Plaintiff has failed to state a DPPA claim against the Cities and their personnel and, therefore, recommends that both Cities' motions for judgment on the pleadings be granted with respect to Count I.

### C. Section 1983 Claims

Pursuant to § 1983, Plaintiff alleges that all Defendants violated her statutory rights under the DPPA and constitutional right to privacy under the Fourth and Fourteenth Amendments. (Compl. ¶¶ 206–46.) The Cities move for judgment on the pleadings in regard to these claims, arguing that (1) the DPPA contains a comprehensive remedial scheme, precluding relief under § 1983; (2) Plaintiff does not have a constitutional privacy interest in the information allegedly accessed; and (3) "Plaintiff has failed to allege any facts to show that her alleged injuries were caused by a constitutionally deficient policy or custom, or the failure to properly train St. Paul [and Minneapolis] [p]olice [o]fficers." (St. Paul's Mem. in Supp. at 11–16; Minneapolis's Mem. in Supp. at 11–15.) Plaintiff incorporates by reference the constitutional arguments set forth in her Response to the Commissioner Defendants' Motion to Dismiss (ECF No. 30) and Plaintiff's Response to Dakota County's Motion to Dismiss (ECF No. 63).

■ "Section 1983 provides a federal cause of action against anyone who, acting pursuant to state authority, violates any rights privileges or immunities se-

cured by the Constitution and laws of the United States." *Midwest Foster Care & Adoption Ass'n v. Kincade,* 712 F.3d 1190, 1195 (8th Cir.2013) (quotations omitted); *see also Potocnik v. Carlson,* 9 F.Supp.3d 981, 996 (D.Minn.2014) ("Section 1983 'authorizes suits to enforce individual rights under federal statutes as well as the Constitution.'" (quoting *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 119, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005))). Specifically,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "Section 1983 does not itself create any substantive rights, 'but merely provides a method for vindicating federal rights elsewhere conferred.'" *Kiminski,* 2013 WL 6872425, at *9 (quoting *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)); *accord Mallak,* 9 F.Supp.3d at 1059 ("Section 1983 is not itself a source of substantive rights, but is the procedural vehicle through which to vindicate federal rights elsewhere conferred."). Significantly, § 1983 serves "to vindicate only 'the violation of a federal *right,* not merely a violation of federal *law.*'" *Kincade,* 712 F.3d at 1195 (quoting *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)).

### 1. DPPA

The Cities assert that § 1983 is not available to Plaintiff for any alleged DPPA violation because the DPPA contains a

comprehensive remedial scheme and, therefore, Congress implicitly foreclosed enforcement of the DPPA via § 1983. (*See* St. Paul's Mem. in Supp. at 11–12; Minneapolis's Mem. in Supp. at 11.)

■ As the Court earlier observed in Section III(A)(2)(a) of its R & R, which is incorporated by reference herein, any § 1983 claims based on violations of the DPPA necessarily fail because Plaintiff has failed to state a DPPA claim against the Cities. (R & R at 23–24.) Accordingly, dismissal is warranted on Plaintiff's § 1983 claims based on the DPPA for lack of a statutory violation alone. *Gulsvig v. Mille Lacs Cnty.*, 13–cv–1309 (JRT/LIB), 2014 WL 1285785, at *7 (D.Minn. Mar. 31, 2014); *Bass*, 998 F.Supp.2d at 824. Even assuming arguendo that Plaintiff had stated a DPPA claim against the Cities, Plaintiff's § 1983 claims based on the DPPA fail because, for the reasons stated in Section III(A)(2)(a) of the R & R, this Court concludes that the DPPA's comprehensive enforcement scheme forecloses a § 1983 remedy.[6] (R & R at 24–29.) *Accord Kampschroer*, 57 F.Supp.3d at 1142–43, 2014 WL 5530590, at *13. Therefore, the Court recommends that Plaintiff's § 1983 claims based on violations of the DPPA be dismissed for failure to state a claim.

### 2. Constitutional Privacy Claims

■ The Cities also move for judgment on the pleadings for Plaintiff's constitutional privacy claims based on the Fourth and Fourteenth Amendments because "[t]his district has declined to recognize that an individual has a reasonable expectation of privacy in the information contained in her driver's license or motor vehicle records that are held by a governmental agency," and thus Plaintiff is unable to "allege[ ] sufficient facts to support a deprivation of her constitutional rights." (St. Paul's Mem. in Supp. at 12; Minneapolis's Mem. in Supp. at 12.) In response to Plaintiff's allegations that an impermissible access of her driver's license information constitutes an illegal search and seizure under the Fourth Amendment, the Cities argue that "Plaintiff's driver's license and motor vehicle information belongs to the DPS, not to her," and thus Plaintiff lacks "a sufficient personal interest in the object of a search in order to trigger Fourth Amendment rights." (St. Paul's Mem. in Supp. at 14; Minneapolis's Mem. in Supp. at 13–14.)

For the same reasons stated in Section III(A)(2)(b) of this Court's prior R & R, which are incorporated by reference herein, the Court concludes that Plaintiff has no reasonable expectation of privacy in her driver's license information, namely, her address, picture, date of birth, eye color, height, weight, and driver's license number. (R & R at 29–34.) *Accord Kampschroer*, 57 F.Supp.3d at 1143–44, 2014 WL 5530590, at *14. Plaintiff does not allege that the Cities accessed *her* Social Security number or health information, or that Plaintiff even provided health information to DPS. (R & R at 35.) In sum, because Plaintiff has no reasonable expectation of privacy in the information allegedly accessed, this Court recommends that Plaintiff's § 1983 claims against the Cities based on alleged violations of constitutional privacy rights be dismissed.[7]

---

**6.** As stated in the prior R & R, the Court need not reach the issue of whether the DPPA is a statutory embodiment of the right to privacy because, even assuming the DPPA creates a federally-protected right, the DPPA's compre-hensive enforcement scheme forecloses a § 1983 remedy. (*See* R & R at 24–29.)

**7.** Because the Court finds the lack of a reasonable expectation of privacy to be dispositive of Plaintiff's constitutional privacy

### 3. *Monell* Claims [8]

The Cities argue that Plaintiff has failed to state a *Monell* claim because "Plaintiff has failed to allege any facts to show that her alleged injuries were caused by a constitutionally deficient policy or custom, or the failure to properly train [the Cities'] [p]olice [o]fficers." (St. Paul's Mem. in Supp. at 15; Minneapolis's Mem. in Supp. at 14–15; *see also* Compl. ¶¶ 144–52, 197.)

 In Section III(B)(3)(c) of the R & R, this Court previously observed that, in order for liability under § 1983 to attach, there must be an underlying constitutional tort committed pursuant to an official municipal policy. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 820 (8th Cir.2012); *Veatch*, 627 F.3d at 1257. "T[he Eighth C]ircuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability must first be found on an underlying substantive claim." *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir.2007) (quotation omitted). Because the Court concludes that Plaintiff has failed to state a claim under § 1983 for violation of her constitutional privacy rights against the Cities and its personnel, it necessarily follows that Plaintiff has failed to state a *Monell* claim against the Cities. *Brockinton*, 503 F.3d at 674; *see also Ray*, 24 F.Supp.3d at 849–50; *Mallak*, 9 F.Supp.3d at 1063 ("Because Plaintiff has not established an underlying violation of any constitutional right, any *Monell* claim against the City and County

Defendants must be dismissed." (citation omitted)); *Bass*, 998 F.Supp.2d at 824 ("As already explained, all constitutional claims against the individual defendants fail. As a result, dismissal of the municipal liability claims against the City Defendants is warranted.").

Accordingly, the Court recommends that the Cities' motions be granted with respect to Counts II and III.

### D. Invasion of Privacy

 The Cities also move for judgment on the pleadings regarding Plaintiff's common-law, intrusion-upon-seclusion privacy claim. An intrusion-upon-seclusion claim requires that "one intentionally intrude, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns. . . ." *Lake v. Wal–Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn.1998) (quotation omitted). "The tort has three elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." *Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn.App.2001). To meet the "highly offensive" threshold, a plaintiff must show that the interference is "substantial," i.e., "of a kind that would be highly offensive to the ordinary reasonable person, as the result of conduct to which the reasonable person would strongly object." *Id.* at 745 (quotation omitted). Plaintiff alleges that "[b]y improperly obtaining [her] private personal information

---

claims, the Court does not consider whether the alleged accesses of her driver's license information constitute a search under the Fourth Amendment. *Cf. Potocnik*, 9 F.Supp.3d at 997 ("No court has ever held that accessing a driver's-license database constitutes a search or seizure within the meaning of the Fourth Amendment."); *Bass*, 998 F.Supp.2d at 823 (no search occurs under the Fourth Amendment if there was no reasonable expectation of privacy).

**8.** Under *Monell v. Department of Social Services,* a municipality can be held "liable under § 1983 if an 'action pursuant to an official municipal policy or some nature caused a constitutional tort.'" *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citation omitted) (quoting 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

for impermissible reasons, Defendants intentionally intruded upon the solitude or seclusion of [her] private affairs and concerns" and that such an "intrusion would be highly offense to a reasonable person." (Compl. ¶¶ 273–74.)

 The Cities first assert that "Plaintiff's invasion[-]of[-]privacy claim is wholly dependent upon establishing a DPPA or § 1983 violation." (St. Paul's Mem. in Supp. at 16; Minneapolis's Mem. in Supp. at 16.) According to the Cities, Plaintiff's failure to allege a federal statutory or constitutional violation is dispositive of her common-law tort claim. As discussed above, a constitutional privacy claim requires a reasonable expectation of privacy and Plaintiff did not have a reasonable expectation of privacy in the information at issue here. (*See supra* Section IV(C)(2).) The absence of a reasonable expectation of privacy in the constitutional context lends some support to the Cities' assertion that a legitimate privacy interest may also be lacking under common law. But, while a diminished expectation of privacy in the data at issue may be similarly applicable to Plaintiff's constitutional and common-law privacy claims, the Court declines to find that either a DPPA violation or a constitutional privacy violation is a prerequisite to a common-law, invasion-of-privacy claim and turns to the Cities' second argument—the offensiveness of the intrusion.

The Cities argue that "[n]o reasonable person could find that the alleged access of [Plaintiff's] information meets the 'highly offensive' threshold." (St. Paul's Mem. in Supp. at 17 (quoting *McDonough v. Al's Auto Sales, Inc.*, No. 13–cv–1889 (DSD/FLN), 2014 WL 683998, at *19 (D.Minn. Feb. 21, 2014)); Minneapolis's Mem. in Supp. at 16 (same).) Plaintiff incorporates by reference arguments set forth in her Response to Dakota County's Motion to Dismiss, wherein she contends

that "[t]he sheer numbers of the accesses [involved in this matter] would lead a reasonable person to find the intrusion 'highly offensive.'" (ECF No. 63 at 39.)

■ "The 'highly offensive' nature of the intrusion is generally a fact question for the jury, but a court must determine whether a certain threshold of 'offensiveness' exists for the plaintiff to have a cause of action for intrusion." *Freeland v. Fin. Recovery Servs., Inc.*, 790 F.Supp.2d 991, 995 (D.Minn.2011); *accord Bass*, 998 F.Supp.2d at 824 ("Invasion[-]of[-]privacy claims involve a preliminary determination of offensiveness which must be made by the court in discerning the existence of a cause of action." (quotation omitted)); *see also Swarthout*, 632 N.W.2d at 745 ("[Q]uestions about the reasonable person standard are ordinary questions of fact, but they become questions of law if reasonable persons can draw only one conclusion from the evidence." (quotation omitted)).

 It bears repeating that Plaintiff "must meet a high threshold of offensiveness and expectation of privacy to have a viable claim for intrusion upon seclusion." *Rasmusson*, 991 F.Supp.2d at 1078. For the reasons stated in Section III(B)(4) of the R & R, which are expressly incorporated herein, the Court finds that Plaintiff has failed to state a claim for intrusion upon seclusion because the alleged intrusion—accessing of an individual's private data via the database—would not be highly offensive to reasonable person. (R & R at 52–53.) *Accord Kampschroer*, 57 F.Supp.3d at 1144–45, 2014 WL 5530590, at *15. And, as previously discussed in the R & R, Plaintiff has given the Court no basis to infer that *all* of the alleged impermissible accesses at issue in this litigation should be attributed to these two defendants. (*See* R & R at 52.) *See Kost II*, 983 F.Supp.2d at 1134 ("Although Plain-

tiffs assert similar claims against the Moving Defendants, the claims against each stand alone, as no concert of action has been alleged.").

Therefore, the Court recommends that the Cities' motions for judgment on the pleadings be granted with respect to Count VI.

## V. ALTERNATIVE BASES

Within their motions for judgment on the pleadings, the Cities also alternatively move for summary judgment, and, in the event that any claims survive, that such claims be severed from the instant action. Because the Court concludes that the Cities' motions for judgment on the pleadings should be granted, the Court recommends that the alternative relief sought by the Cities be denied as moot. *See Traub*, 2014 WL 2881484, at *5–6.

## VI. RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant City of Saint Paul's Motions for Judgment on the Pleadings, Summary Judgment and Motion to Sever (ECF No. 79) be **GRANTED IN PART** and **DENIED IN PART AS MOOT.**

2. Defendant City of Minneapolis's Motion for Judgment on the Pleadings, Summary Judgment and Motion to Sever (ECF No. 87) be **GRANTED IN PART** and **DENIED IN PART AS MOOT.**